Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Good morning. You may be seated. Good morning again. We are ready for our first case. And is it Ana Hernandez Guardado v. Pamela Bondi? And first we'll hear from, is it Mr. Kirchman? Yes, ma'am. All right, we will hear from you first. Thank you. Good morning. Eric Kirchman on behalf of the petitioner. This is a petition for review of the denial of a motion for reconsideration by the Board of Immigration Appeals. The issue we're doing is, or that we're asking review of, is the findings of whether it was a particularized social group. The Board found that it wasn't a particularized social group because the group was defined by the harm that it was subjected to, so the whole circularity argument. But I think that they were wrong in that, in that we had the case of the matter of ARCG where they looked at, where the Board found that a Guatemalan woman who was married, who could not leave her relationship that qualified as a particularized social group. Does it matter that she, here, that Ms. Guardado was not married? Does that make a difference in determining the PSG? No, I don't think it makes a difference because it's a relationship, and whether you're married, whether you're not married, there are all sorts of different relationships, but it is a domestic relationship. And I think that's what, a marriage is just a domestic relationship formalized by law. Here we have an informal relationship, but it's still a domestic relationship nonetheless. I would just, I wanted to ask what's the limiting principle on that concept? Is it any domestic relationship then? Is it a romantic domestic relationship? What's the limiting principle for us? I guess this would be similar to a romantic domestic relationship where the parties are in a romantic intimate relationship. Well, my question, you may not win ultimately, you may or may not win. The thing that concerns me is the way the analysis was done. It seemed that it was a quick look at the PSG instead of giving a little more in-depth analysis to that. Is that what happened in this case? Yeah, that's what I believe happened. They just saw the way it was defined and they didn't consider it any further because it wasn't artfully drawn the way it was presented. What would you have the judge do in that case, in this case? Well, I think they should look to see what really is going on and what is actually discussed. I mean, we had this surplusage of the, what was it again, the El Salvadoran women who are continually sexually abused and tortured by gang members resulting in severe psychological abuse and death to immediate family member and lack of protection from government and police. Now, I think what happens is because the people who are filing these PSGs are trying to encompass everything and it causes problems because here, if you look and distill what this PSG was, it's a woman who was forced into a relationship. Then she agreed to it under, I guess, under duress. She agreed to enter into this relationship with this gang member, that it was fine for a while. Then it became abusive and then when she attempted to leave it, he cut her with a knife, he hit her, he threatened her and she goes to the police and the police say you just got to basically, I mean, they said it was nighttime and that basically she just has to get used to it. She just has to accept it. So that was going to the police, that's what she got. So we have a situation where she enters into a relationship, happens to be with a gang member, not by her choice, and then it becomes abusive. So that's where we have the persecution of her and she goes to the police and the police will not assist her. So I think that would be a sufficient PSG and what happened here is because I think all the extra on the PSG caused the BIA just to look at it and say, well, it's just circular, it's defined by the harm. Yes, how are you going to, what's your best argument to get around the anti-circularity requirement? Because clearly, I think when you get into the discussion regarding psychological abuse and the death of an immediate family member, it appears to be circular as to the harm. But I was reading more about the PSG and it says it has to exist basically before the abuse. You have to be able to define it before abuse. And that's really what it is because like you could say in the South during the Klan era, okay, so you have the black population that without harassment, a PSG is really not, I mean, even though they are a PSG, it's not relevant to anything. It only becomes relevant once they become subject to abuse and harassment. There you had the Klan, so you have it, so it's basically you have the group that exists independent of the abuse and that's what we have here. We have a group of women in a relationship with a gang member. So in the case that I believe we're talking about, Amaya DeSicari, and that was a Fourth Circuit case that talked about the anti-circularity principle. And in that case, this court was relying on the BIA and the Attorney General. So my question is whether that case, given the overruling of Chevron, whether we are still bound by that decision and whether we still need to give deference to the BIA opinions at all in this case post-Chevron. Well, I don't think you have to post-Chevron. I don't think you have to give deference. I guess they're instructive, but I don't think that the deference is required. But if the group exists independent of the abuse, and this group does exist independent of the abuse, because the circularity would be a group of people in El Salvador punched in the face. That would be circular because a group would be defined by being punched in the face. Here we have a group that exists independent of abuse, and I think that was the issue that was missed by the BIA. And that it should have looked at the group itself, and then the abuse is relevant because that's part of the persecution. And that's what happened here. What's the difference between the – I don't see how the abuse is separate from the group. The group, as I see it, is defined in your client's definition as El Salvadorian women who are continually sexually abused and tortured by gang members. Isn't that circular? Well, that is if you take it at its face. If you look a little deeper into it, it exists independent of that. I think it was inartfully drawn. What would be the independent group if you take the harm out? It would just be El Salvadorian women who? Are in a relationship with a gang member, basically who can't leave. It's like the Guatemala case where that woman couldn't leave her domestic relationship. But I think in that case, don't they say it was because she was married, which is why I asked you the question in the beginning. I think they say – in that case, it discusses the fact that she's married to him in societal norms because of the marriage. Well, that was one thing because of the way that marriage is looked at in the Guatemalan culture. But I think you could have, because there are more than one way to have a domestic relationship, and one they look to see because the laws for domestic violence, which is one of the factors you can look at to see if there is particularity of the group. And we have laws that protect people from domestic violence, whether they're married or not. Well, I think what's relevant is the laws in the country, in her country. And so is there any development in the record of these laws in the country that protect domestic relationships? Or, for example, of common law marriage, which I understand to be the case in many countries? Well, we have the country conditions in the appendix which sets forth the laws for domestic violence, and it goes through domestic violence in there. So that's why the society recognizes domestic violence outside of a marriage. So we are looking at something society does recognize. Otherwise, the domestic violence laws would be limited just to people in a marriage, and they aren't. So society does recognize this group as something that exists independent of the violence. I mean, yeah, we have a problem in that how our PSG was drawn, but I think if you look deeper in the PSG, you see what it really is. So I think we have a PSG there. We also have the second alternative PSG about rural El Salvadoran women, and they just said, well, who lacks standing. The Board of Immigration Appeals said, well, it's not particular enough, or it's not defined enough. What are rural El Salvadoran women? And I think rural has a very recognized definition. But it's not an immutable characteristic. Well, that would be true. And doesn't our case law say that the PSG must be defined by an immutable characteristic? Yes, that's correct. And we're bound by that precedent. Yes. So, yeah, that is an immutable characteristic because she can move. And she did. Yeah, she came here. So my guess is that your argument is your first PSG. Yeah, so the first PSG. Now that it's been pointed out, yes, that is my argument. And then we also have the well-founded fear of persecution. I know the government's arguing that we didn't preserve that. And I think it is preserved. Number one, in our brief, we said that this is a clear case. In the brief to the BIA, we said this is a clear case of domestic violence, which shows persecution. And even though it wasn't well-argued in the motion for reconsideration, the board still, in its decision, denying the reconsideration, addressed it. So it was addressed by the court, so, I mean the board. So that would mean that it would be preserved for us. It's not a waived argument because it is addressed. And they say, well, there's no fear of persecution. But we have the past persecution. That was found. And a Ninth Circuit case says a person who has suffered a well-founded fear of persecution in the past is deemed to have a justifiable fear of future persecution, unless the government shows by a preponderance of the evidence that conditions have changed in an alien's home country to such an extent that that fear of future persecution is no longer well-founded. Now, what's also interesting in this is she originally left El Salvador and came to the United States in 2014. Now, yes, we're at 2025. And we have this period of time where there's no contact or anything. But when do we measure it by? Can the government just delay a petition for years and then come back and say, well, nothing's happened in that time period? So your any belief of a fear of persecution is just not founded anymore. And that's here. So we have 10 years because of the government not having a final resolution of the case. Initially, when she came here, it was all very fresh. So we have 2014, 2015. 2014, I think, is the last abuse in El Salvador. She comes here. And then it just lingers. And the government wants to benefit from that by saying, well, because it took so long, you can't show that these people are still actively pursuing you. But she has a well-founded fear. She was a victim of the past persecution. And unless the government can rebut that, that if she returns she would not be subject to it, then that's sufficient as a fear of persecution. Did the BIA apply the presumption? I didn't see it. And your contention is they should have. It should have applied a presumption because it did find the prior abuse. So 20 seconds. I don't have anything I can add in 20 seconds. All right, thank you. You have a reserved five minutes, so we'll have you back up shortly. All right, thank you. And it's Mr. Nelson. Good morning. Aaron Nelson for the respondent, the Attorney General. Your Honor, for petitioner have succeeded on her motion to reconsider, she had to establish an error of fact or law in the Board of Immigration Appeals prior April 2023 decision. And we contend that she simply failed to do that. And I would like to start with first principles when we are discussing asylum cases based on, that are anchored on, proposed particular social groups. As the panel has already engaged petitioner's counsel, in addition to the immutability principle, the particularity principle, and the social distinction, what transcends all of the cognizability analysis on particular social groups is that the group cannot be defined by the harm to its putative members. And this is not a controversial, it's axiomatic. Was any of that written in the text of the INA? Or is that all judge made? I believe it's all law made by the Board of Immigration Appeals and by most of the circuits in the case law that I reviewed coming here. And all of those cases were decided before Loeb or Bright, isn't that right? Most of them would be. And in the case that Your Honor referred to, Sikaran, was decided before Loeb or Bright. But in reviewing that case, I read it as actually not only giving deference to under Chevron, but also offering its own analysis of particular social groups. And standing on its own, on that analysis, such that the anti-circularity principle was affirmed there. But it's not in the text of the INA? It's not in the text of the INA. And I would say with regard to- So where does the INA itself support this anti-circularity principle? Where do we get that from the text of the statute? So I would invite the court to review the Sikaran decision wherein it says that without the anti-circularity principle, the on account of requirement, we have these categories that an applicant has to anchor her asylum claim in. And she has to say that she was persecuted or has a well-founded fear of future persecution on account of one of these categories. And in Sikaran, the panel there said that without the anti-circularity principle in place, the on account of or the nexus requirement becomes superfluous or a tautology. It would be like saying I'm a member of a group of people who were persecuted in the past. Therefore, I should get asylum. It's this tautology. And I think that Sikaran and all of the- Well, I shouldn't say all of the other circuits, but the decisions that rest on the idea that a definition cannot- The definition of a particular social group cannot be anchored in the harm to its members. It certainly survives Loperbright. In the post-Chevron world that we're in, if we see in Loperbright that the Supreme Court was making a prospective decision and directed that well-reasoned decisions would stand under stare decisis. And I believe that, for example, the Sikaran decision of this circuit found that the following particular social group was not cognizable. And the petitioner there proposed married Salvadoran women in a controlling and abusive domestic relationship. And that was not cognizable because it was defined by the harm to the membership. What about familial status? Can that constitute a particular social group, members of a family, as your colleague suggests? So petitioner's counsel in his opening remarks said, if you distill what this, her first particular social group was, if you distill this into what it really was, that's another way of asking the court to give her a second chance at defining the particular social group. He, opposing counsel, asks that the matter of AB decision by the previous attorney general, which resurrected ARCG and its definition of a particular social group, is such that, in fact, in their opening brief, they say hers is no different. But we don't even need to do a deep textual analysis to see that, in fact, it is different. So in the matter of AB, which resurrected that particular social group, that social group was married women in Guatemala who are unable to leave their relationship. Isn't that what we have here? No, here we have Salvadoran women who are continually sexually abused and tortured by gang members, resulting in severe psychological abuse and death to an immediate family member and lack protection from government and the police. Mr. Kirschman brought up an interesting point that the country report recognizes domestic violence and it's not just limited, I believe, to married women. Does that make a difference in your argument? Your Honor, no, it doesn't. We see cases that come from El Salvador and Central America in which the applicant has experienced abhorrent conduct. But in the asylum statute, it doesn't encompass every abhorrent conduct. And so whether or not the country conditions say that spousal abuse or domestic violence is a widespread problem with respect to this case, that's an ancillary backdrop because the definition, petitioner seems to have wanted to present a different particular social group definition, but as harsh as it may sound, she's stuck with the one that she presented in the first instance. And that is not controversial. Also in the Sikharon case, this circuit noted that the petitioner there tried to massage and offer new particular social group iterations in her petition for review and Sikharon's decision said that that was not allowable. And so as harsh as it may sound, she is stuck with the definition that she presented. And that definition is suffused with harm to its putative members. And this anti-circularity principle is something that the government contends that she cannot get around. Are there any other questions? I do have a question. Let's say she is able to, let's say she is able to, this court finds that her PSG is cognizable. On the fear of persecution, I wanted to hear from you regarding that, but particularly as to whether or not the BIA gave an explanation as required. With respect to the well-founded fear finding, Your Honor? So I think the board decision with respect to well-founded fear is circumspect, but part of the reason it's circumspect is because the board has to analyze the claims that are before it and petitioner's claim to the board was effectively silent with regard to the well-founded fear. Now to the extent that the board, circumspect though it may have been, engaged the well-founded fear, we would contend that petitioner has not shown an abuse of discretion on seeking reconsideration of that decision, even though it's circumspect, because underlying that, the board's decision on the merits found that there was just not an objectively reasonable indicia of evidence that her well-founded fear is anchored in the facts. You would agree they did not give any explanation. They just said it's not, and the BIA did not provide any explanation as to why it was not. It reaffirmed its prior decision, and in denying reconsideration, it's one sentence. But I would say, again, that's mostly because petitioner didn't present that in a full-fledged argument to the board. With respect to the well-founded fear, it still is. I mean, I understand the predicate that Your Honor presented, which is assuming that somehow she's able to get over the hurdle of the anti-circularity. What happens to her well-founded fear? Well, I would reiterate that the well-founded fear still has to be anchored in one of the five categories for asylum, and her category that she chose is a particular social group. Again, where that fails, the well-founded fear fails. Nonetheless, the evidence that was reviewed and decided by the agency was that she left her hometown and went to the capital where she lived with her sister for several months. No one looked for her. No one harmed her. There's nothing in the record about menacing phone calls. There is one instance while she was away from her hometown where she testified that this gang member, her former boyfriend, his henchman, came to visit her mother and said, she better come back to the relationship with the gang member or they will harm her. That was the one instance, and there's no evidence that they came a second time. She came to the United States, and now we're 11 years, and there's simply no evidence that this gang member continues to pursue her. The other evidence with her saying that her father was killed, she's not certain she believes that it was because of this former gang member, but there's no death certificate. There's no corroborating evidence. She just thinks that that's true, and the same evidence where she thinks that that's true, she also testified that in that time frame, lots of mothers and fathers and brothers in her area were unfortunately murdered by nefarious characters. So we would say that that survives the objectively reasonable component. But I guess my concern is just that the BIA did not give us any reasoning to review. They just said, I think the exact words are, she does not, she failed to establish a well-founded fear of persecution, and they gave no further reasoning as to how they arrived at the conclusion. So in the denial of reconsideration, although that's the only decision before the court in the petition, necessarily we have to sort of take a peek at the merits decision, and I believe the merits decision, the two are linked. In the merits decision, the board says, we also uphold the immigration judge's finding that the respondent did not establish a well-founded fear of persecution, considering the gang members apparently made no effort to locate the respondent when she went to live with her sister, the lack of evidence to support her belief that the gang members killed her father, et cetera, et cetera. It goes through the record at 22, I believe the third paragraph. So because the two decisions, you have to take a peek at the prior decision. It's sort of incorporated by reference, I would believe, because she's asking for reconsideration of the prior decision. You made an error in the prior decision, and I certainly take your point that the board's denial of reconsideration on well-founded fear was just that sentence, but because it has to look back at its prior decision, I believe that that's incorporated, and I believe there's enough there to support its decision. Thank you. If there are no further questions. All right, thank you. Thank you very much. Just to begin with, there was one additional incident about the gang members threatening the petitioner, and that after she was detained in the United States, that fact was communicated to her mother by the gang members, so they knew, so they had some evidence of knowing where she was, and I think with the PSG, what is telling that this is a group recognized in El Salvadorian society is the statement made by the police when she went there where they said, there is nothing we can help you with, and what you just told us is completely normal. You just should not give it any attention. Now, that's recognizing her in a specific category of people because they're telling her it's completely normal. Now, would they have done that if it was just somebody on the street who had been cut by a gang member? So I think this statement by the police is recognition of the PSG in this case, and I would submit on that and ask that the order of the BIA be vacated. Thank you. Thank you. Any other questions? Thank you. Okay, thank you. All right, thank you, counsel. At this time, we will come down and shake your hands. Just for, by way of information, Judge Floyd just recently had surgery, so he is not. We're going to let him have a seat, and we'll have you all come up after the two of us come down and shake his hand.
judges: DeAndrea Gist Benjamin, Nicole G. Berner, Henry F. Floyd